IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DARRYL MCELROY, | |
|  Plaintiff, | |
|  v. | CIVIL ACTION<br>NO. 12-6219 |
| SANDS CASINO, | |
|  Defendant. | |

## MEMORANDUM

**SCHMEHL, J.**                                                                                           January 7, 2014

Following his termination as an employee of Defendant Sands Casino, Plaintiff Darryl McElroy filed suit alleging FMLA-related interference and retaliation as well as breach of contract. Defendant filed a motion for summary judgment and then a motion to strike Plaintiff's response for several reasons. The Court will grant both of Defendant's motions, striking Plaintiff's response and entering summary judgment in Defendant's favor.

Factual and Procedural Background

Plaintiff Darryl McElroy worked as a dealer for Defendant Sands Casino from June 28, 2010, until his termination on December 19, 2011. During his employment, Plaintiff had some attendance issues that are ultimately irrelevant to this case, but they may have influenced his decision to inquire about FMLA leave, which may also have been related to head pain or diverticulitis. Regardless of the reason or reasons, sometime in the fall of 2011, Plaintiff contacted Stacey Berasley, an employee in Defendant's

human resources department who deals with benefits inquiries. Berasley referred Plaintiff to Las Vegas Sands Corp. Leave Administration, an outside organization that handles leave issues for Sands properties. In accordance with her typical practice, Berasley did not tell anyone about Plaintiff's inquiry. On October 17, 2011, Plaintiff contacted Leave Administration and subsequently received a packet of forms and information. On December 1, 2011, Plaintiff submitted a certification from his doctor to Leave Administration, and on December 15, Leave Administration wrote to Plaintiff, telling him that his form was incomplete and more information was needed. Plaintiff never supplemented the information or completed the leave request.

Plaintiff's termination shortly thereafter, on December 19, 2011, was the culmination of an investigation into an incident involving Plaintiff and another dealer, Paul Lee. On December 10, while entering an elevator with Lee, Plaintiff grabbed his shoulder with one hand and grabbed or prodded him in the waist or lower back with the other hand, basically pushing Lee into the elevator. Lee expressed his anger and told Plaintiff not to touch him again, but Plaintiff touched him again while getting off the elevator. Plaintiff had previously grabbed Lee's nipple while at dealer school in the spring of 2010. Plaintiff had also previously been disciplined for inappropriate comments to a female coworker regarding a massage, for ordering alcohol at the casino while in uniform contrary to policy, and for making rude comments to another dealer who had chips stolen from his table.

Following the elevator incident, Team Member Relations Manager Kathleen Birkbeck and Team Member Relations Representative Rob Beck conducted an investigation, viewing surveillance footage and interviewing witnesses. Birkbeck and

Beck took the results of their investigation to Vice President of Human Resources Michelle Trageser, who decided to terminate Plaintiff.

The final point of fact necessary to understand the case is Defendant's issuance of an employee handbook to all of its employees. The handbook's fourth page contains several general statements and disclaimers. Under the heading "ABOUT THIS HANDBOOK," it states that "the Company reserves the right to change its policies and benefits, as necessary, without prior notices" and that "[f]rom time to time, exceptions to policies may be made when, in the sole discretion of the Company, circumstances warrant." Under the heading "EMPLOYMENT STATUS," the handbook states:

> Nothing in this handbook is intended to create a contract of employment or benefits and no statement made by any officer, director, manager, supervisor or Team Member can be construed as a binding guarantee of employment. In accepting employment at the Company, the Team Member agrees and acknowledges that employment shall continue only so long as it is mutually agreeable to the Team Member and the Company.

One of the many policies contained in the handbook is a peer review procedure for appeal of discipline and termination. Plaintiff requested such a peer review, but Defendant denied it, ostensibly because the termination concerned sexual harassment, which is an express exception to the peer review policy.

Certain aspects of the case's procedural history are also relevant. On June 21, 2013, Defendant filed a motion for summary judgment, accompanied by a brief and other supporting materials. Twenty-one days later, on July 12, 2013, Plaintiff filed a brief in opposition and related materials. Defendant then filed a motion to strike Plaintiff's opposition, to which Plaintiff promptly responded. The Court heard oral argument on both motions on September 16, 2013.

One of the bases for Defendant's motion to strike was Plaintiff's failure to attach or produce an unemployment hearing transcript referenced in his brief opposing summary judgment. At argument, Plaintiff asserted that the transcript was delivered to the clerk's office as part of an appendix to his summary judgment opposition, but Defendant noted that it was still not available of record, nor had it been produced to Defendant in accordance with ongoing discovery obligations. Following argument, the clerk's office confirmed that Plaintiff had delivered an appendix on disc that was mistakenly not uploaded to the electronic case filing system; nevertheless, once that error was corrected, the Court's review revealed that although the transcript was listed in the appendix's table of contents, the transcript itself was never actually included. Accordingly, the Court ordered Plaintiff to serve a copy of the transcript upon defense counsel as well as chambers within ten days; the order was signed October 2 but not docketed until October 7. Defense counsel received the transcript October 10. The chambers copy was postmarked October 17 and received in chambers October 21. Plaintiff also electronically filed the transcript on October 18.

Motion to Strike

Defendant presents three grounds for striking Plaintiff's opposition to the motion for summary judgment: failure to attach the unemployment hearing transcript, failure to file the opposition within the time limit, and failure to keep the opposition brief within the permitted page limit. In response, Plaintiff first argues that the motion to strike is a sly attempt to file a reply brief without permission. That contention is baseless, as

Defendant's motion to strike squarely addresses the reasons for striking and does not take the opportunity to counter the substance of Plaintiff's opposition.

Plaintiff's brief opposing summary judgment did exceed the Court's twenty-five-page limit, and rather egregiously, at just over thirty-seven pages. Just one day after the motion to strike was filed, Plaintiff filed a response that included a revised brief of twenty-five pages. While on one hand this represents a prompt correction of the error, it also suggests Plaintiff could easily have complied with the limit in the first place.

As for the transcript, Plaintiff's opposition to summary judgment is not as wholly reliant on it as Defendant suggests, but it certainly should have been attached and produced to Defendant as supplemental discovery. Plaintiff's argument that he did not have the transcript at the time of Defendant's discovery requests is unavailing, as he has a continuing obligation to turn over responsive materials. *See* Fed. R. Civ. P. 26(e). Further, Plaintiff's argument that he did not need to produce a publicly available document is based on a case that involved more extensive "selection and compilation" of public documents, such that the collection of documents constituted attorney work product. *See In re Student Fin. Corp.*, MISC NO 06-MC-69, 2006 WL 3484387 (E.D. Pa. Nov. 29, 2006) (citing *Sporck v. Peil*, 759 F.2d 312, 315-16 (3d Cir. 1985)). Finally, on this issue, Plaintiff certainly did not promptly correct the error. Only after multiple rounds of correspondence, stories, excuses, and an order threatening sanctions did Plaintiff finally provide the document, and even then the copy served on chambers was arguably late.

With respect to the late filing of the summary judgment opposition itself, Plaintiff's initial error was not extreme. As Defendant notes, the opposition was due July

5

8, 2013—fourteen days after the motion under Local Rule 7.1, plus three more under Fed. R. Civ. P. 6(d)—and Plaintiff filed his opposition only four days later on July 12, 2013. But rather than admit the error and argue its mildness, Plaintiff insists the brief was timely under what proves to be a blatant misstatement of an amendment to Local Rule 7.1. Plaintiff states that a February 27, 2012, order amended Local Rule 7.1 to allow twenty-one days for a brief in opposition to summary judgment. Directly counter to Plaintiff's contention, the amendment clearly *reduces* the time for responding to summary judgment from twenty-one to fourteen days, aligning the time limit with that applicable to other motions.

      This panoply of individually moderate errors in the filing of Plaintiff's opposition to summary judgment, especially when combined with the unreasonable positions Plaintiff has taken in opposing the motion, justifies a grant of Defendant's motion to strike. Though striking the opposition may seem like harsh punishment for counsel's behavior, having reviewed the summary judgment opposition papers in connection with the motion to strike, the Court is confident nothing raised therein would seriously affect the outcome of the summary judgment analysis to which we now turn.

Motion for Summary Judgment

      Plaintiff's complaint contains two counts. The first is titled "Violation of the Family and Medical Leave Act, 29 U.S.C. Section 2615—Retaliation," and can be read as alleging both a retaliation claim and a straight interference with FMLA rights claim. The second is a count for breach of contract based on Defendant's denial of peer review

related to his termination as allegedly promised in the employee handbook. Both counts clearly fail for simple reasons.

Summary judgment is proper if "there is no genuine dispute as to any material fact." Fed. R. Civ. P. 56(a); *see also Lichtenstein v. Univ. of Pittsburgh Med. Ctr.*, 691 F.3d 294, 300 (3d Cir. 2012). "A dispute is genuine if a reasonable trier-of-fact could find in favor of the non-movant. A dispute is material if it could affect the outcome of the case." *Lichtenstein*, 691 F.3d at 300 (internal citations omitted).

A claim for FMLA-related retaliation requires a plaintiff to prove: 1) invocation of FMLA rights; 2) adverse employment action, obviously including termination; and 3) a causal relationship between the first two elements. *See id.* at 301-02. The causation element may be established by suggestive temporal proximity between a plaintiff's invocation of FMLA rights and his or her termination or other adverse action. *See id.* at 307 (involving an elapsed time from invocation to termination of seven days and citing other cases ranging from two days to three weeks); *see also LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n*, 503 F.3d 217, 232 (3d Cir. 2007).

But there surely can be no causal relationship between an FMLA request and a termination, and any temporal proximity cannot be considered suggestive, if the party making the termination decision had no knowledge of the FMLA request. *See Moore v. City of Phila.*, 461 F.3d 331, 351 (3d Cir. 2006) ("To the extent that [the plaintiff] relies upon the brevity of the time periods between the protected activity and alleged retaliatory actions to prove causation, he will have to show as well that the decision maker had knowledge of the protected activity." (internal citations omitted)); *see also Lichtenstein*, 691 F.3d at 308 (quoting *Moore*, which is not an FMLA case, in the FMLA context);

*Calero v. Cardone Indus., Inc.*, 11-3192, 2012 WL 2547356 (E.D. Pa. June 29, 2012) (noting that an inference of causation from temporal proximity was unwarranted partly because neither the HR manager who terminated the plaintiff, nor the HR manager's own supervisor, who gave approval for the termination, knew the plaintiff had requested FMLA leave); *Morrow v. Verizon Pennsylvania, Inc.*, 02:09-CV-00744, 2011 WL 710226 (W.D. Pa. Feb. 22, 2011) (analyzing whether each of the decision makers in the plaintiff's termination had notice of the plaintiff's use of FMLA leave based on several of plaintiff's actions and communications that might have created such notice). The Third Circuit affirmed summary judgment on the failure-to-promote portion of a retaliation claim where there was "no evidence in the record that could lead a jury to reasonably find that" the person who knew the plaintiff had made an EEOC claim told someone on the promotion committee, "or that the committee otherwise knew about it." *Hare v. Potter*, 220 F. App'x 120, 130 (3d Cir. 2007). The plaintiff in *Hare* argued the committee member likely knew about the EEOC claim because he reported to the other employee who knew of it, but the committee member explicitly denied talking with the latter about the plaintiff; likewise, the plaintiff's theory that the committee member knew because he worked in the same building with others who knew was unsupported by any evidence that the committee member ever interacted with those people or discussed the plaintiff. *Id.*

      Here, none of the individuals involved in Plaintiff's termination knew about his FMLA inquiry. Birkbeck and Beck investigated the elevator incident and took their findings to Trageser, who decided to terminate Plaintiff. The record indicates that only Berasley knew about Plaintiff's FMLA inquiry, and she has declared, "As is my practice with all questions regarding FMLA leave, I did not tell anyone in the Human Resources

department or any of Mr. McElroy's managers about his inquiry." Nothing in the record could support a jury's determination that anyone else knew; therefore, the retaliation claim fails as a matter of law.

If Plaintiff had asserted a straightforward FMLA interference claim in addition to retaliation, that claim would be subject to the same reasoning. Because "the FMLA does not provide employees with a right against termination for a reason other than interference with rights under the FMLA," an interference claim based on termination fails if a defendant "can establish that it terminated [the plaintiff] for a reason unrelated to his intention to exercise his rights under the FMLA." *Sarnowski v. Air Brooke Limousine, Inc.*, 510 F.3d 398, 403 (3d Cir. 2007). As explained above, because the decision makers in this case clearly did not know about Plaintiff's FMLA inquiry, his termination was necessarily for another reason. Summary judgment on any reading of Plaintiff's Count I is, therefore, appropriate and granted.

As to Count II, a breach of contract claim relies on the existence of a contract. *Omicron Sys., Inc. v. Weiner*, 860 A.2d 554, 564 (Pa. Super. Ct. 2004) (noting that the first element of breach of contract is "the existence of a contract, including its essential terms"); *see also Sampathachar v. Fed. Kemper Life Assurance Co.*, 186 F. App'x 227, 230 (3d Cir. 2006). In the employment context, Pennsylvania law provides a strong presumption that employment is at will, and an employee has the burden of overcoming that presumption. *See Luteran v. Loral Fairchild Corp.*, 688 A.2d 211, 214 (Pa. Super. Ct. 1997).

An employee handbook may constitute a contract enforceable against the employer "if a reasonable person in the employee's position would interpret its provisions

as evidencing the employer's intent to supplant the at-will rule and be bound legally by its representations in the handbook." *Id.* (quoting *Small v. Juniata College*, 682 A.2d 350, 353 (Pa. Super. Ct. 1996)). It is for the court to determine whether a handbook contains the necessary "clear indication that the employer intended to overcome the at-will presumption." *Id.*

A clear indication to the contrary in the form of a disclaimer announcing that the handbook is *not* intended as a contract can dispel the existence of a contract. *See Rutherfoord v. Presbyterian-Univ. Hosp.*, 612 A.2d 500, 504 (Pa. Super. Ct. 1992) (finding no contract as a matter of law where a handbook that the plaintiff did not even see until after he was terminated contained a disclaimer that its policies were "not intended to be a legal contract" and were "revised from time to time"); *see also Ade v. KidsPeace Corp.*, 698 F. Supp. 2d 501, 522 (E.D. Pa. 2010), *aff'd*, 401 F. App'x 697 (3d Cir. 2010) (finding a handbook with an express disclaimer insufficient to constitute a contract, "particularly in light of its express statements disavowing any contractual obligation"); *Landmesser v. United Air Lines, Inc.*, 102 F. Supp. 2d 273, 280 (E.D. Pa. 2000) ("explicit disclaimer of the formation of a contract nullifies plaintiff's claim for breach of contract"); *Anderson v. Haverford Coll.*, 851 F. Supp. 179, 182 (E.D. Pa. 1994) ("Courts have held that provisions in employee handbooks which contain disclaimers or state there is no intent to create an employment contract are sufficient to retain the at-will presumption.").

Here, Plaintiff's breach of contract claim rests on Defendant's alleged failure to adhere to the peer review policy enunciated in the employee handbook. The Court need not resolve the parties' vigorous debate as to whether Plaintiff's termination was indeed

related to sexual harassment and therefore exempt from peer review, because the handbook does not constitute an enforceable contract. As in *Rutherfoord*, Plaintiff did not read the handbook, and the handbook states that the policies contained therein are subject to change at Defendant's discretion and exceptions "from time to time . . . in the sole discretion of" Defendant. Even were the handbook's terms enforceable, those terms would entitle Defendant to except Plaintiff's termination from the peer review policy. And as in all the cited disclaimer cases, the handbook here expressly states that "[n]othing in this handbook is intended to create a contract of employment or benefits." While the average employee may not be chargeable with a great deal of legal acumen, any reasonable person in the employee's position could understand from the plain and clear language that the document in question was not intended to create a contract. Plaintiff has the burden to demonstrate that the parties intended to enter into a contract. Where the only evidence to that end is a document that explicitly denies contractual intent, that declares it may change at one party's discretion, and that one party never read, that burden is not met. Summary judgment for Defendant is, therefore, appropriate on the breach of contract count as well.